**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William PRESSER, Defendant-Appellant.**
**No. 14326.**

United States Court of Appeals
Sixth Circuit.

July 6, 1961.

See, also, D.C., 187 F.Supp. 64.

John G. Cardinal, of Hornbeck, Knachel, McLaughlin & Ritter, Cleveland, Ohio, Edwin Knachel, Cleveland, Ohio, on brief, for appellant.

Paul J. Komives, Atty., Dept. of Justice, Washington, D. C., Russell E. Ake, U. S. Atty., Cleveland, Ohio, Frank J. Kiernan and Harry L. Hudspeth, Sp. Attys., Dept. of Justice, Washington, D. C., on brief, for appellee.

Before SIMONS, Senior Circuit Judge, and McALLISTER and CECIL, Circuit Judges.

McALLISTER, Circuit Judge.

From a conviction on a charge of obstructing justice, in violation of a federal criminal statute, through mutilation and concealment of records sought by a congressional investigating committee, William Presser appeals. He claims the District Court committed error in admitting the testimony of Senator John L. McClellan as evidence of the question under inquiry by the Committee; the pertinency and relevancy of names on a paper and invoice allegedly withheld or mutilated; knowledge on Presser's part that such names were pertinent or relevant to the question under inquiry by the Committee; and the testimony of an investigator for the Committee. Appellant also contends that the subpoena duces tecum issued for the production of documents, the violation of which subpoena is the foundation for the indictment, was not issued in accordance with the law, the rules of the Senate, the rules of procedure of the Committee, and the Senate resolution authorizing the establishment of the Committee.

During the period in question, Presser was President of Joint Council No. 41 of the International Brotherhood of Teamsters. At that time, the Senate Select Committee on Improper Activities in the Labor or Management Field, was conducting an investigation, including the affairs of certain officers connected with the Teamsters Union. In carrying out its investigation, the Committee dispatched an investigator, Walter J. Sheridan, to Ohio, to examine the books and records of certain organizations, including those affecting the relations between former Senator Bender and various officials of the Teamsters Union. Mr. Bender had previously been appointed by the provisional president, James R. Hoffa, as chairman of a committee to investigate the Union and the practices carried on by it.

Mr. Sheridan, the investigator for the Senate Committee, came to Cleveland and served the subpoena upon Presser on March 21, 1958. Arrangements were made by the Committee and the Union whereby the subpoenaed records would be turned over to the office of the Committee in Cleveland rather than be taken to Washington. Sometime later, Sheridan, according to his testimony, returned to appellant's office on September 9, 1958, and asked for correspondence files that had not been previously given over in compliance with the subpoena; and, in going through the files, Sheridan found the envelope and invoice containing the list of names in question. The invoice showed a sale of eight champagne buckets at $100.00 each and contained eight names to whom the buckets were to be delivered, one of which was the name of former Senator Bender. It appeared that the buckets were to be Christmas gifts from the Union to the eight named persons.

As Senator McClellan testified, the question was not whether an officer of the Union sent a champagne bucket to another officer, but "it is a question of using Union dues money for such purposes"—and the use of Union dues money was one of the questions the Committee was investigating. Sheridan, after examining the documents, left them, including the invoice, in Presser's possession in order to permit the latter to photostat them; and, when four days later, Sheridan returned, the envelope which bore the notation "Christmas list," and a sheet of paper which listed the names above mentioned were missing; and the invoice itself had been torn in such a manner as to remove the eight names listed on it. When Sheridan realized that the envelope and sheet of paper containing the names had been removed from the files, and the invoice torn in such a way that the names were missing, he stated that he turned to Presser and said: "I should have known better than to trust you," and that Presser replied: "You have your job to do,

I have mine." We accept this evidence as true on this appeal from a verdict and judgment in favor of the government.

However, with great awareness of the situation, Sheridan immediately sought out the original seller of the champagne buckets and was able to secure from him the duplicate copy of the invoice, which contained the eight names that had been torn off the original invoice.

On the trial, Presser maintained that he could not have done anything to the invoice because he went to Washington, D. C., the same day that Sheridan called at his office, and remained there until September 12, just before Sheridan returned to his office. Presser testified that during the time he was in Washington, he visited James R. Hoffa, and stayed in the suite of rooms maintained by the International Union of Teamsters, which is also used by Hoffa.

The government, however, proved that during the period Presser claimed he was staying in Washington and seeing Hoffa, Hoffa had been engaged in making two person-to-person calls to Presser, one to his home, and one to his office, both in Cleveland, one conversation lasting three minutes, and the other conversation lasting eighteen minutes. Moreover, in controverting Presser's claim that he had nothing to do with the removal of the "Christmas list" envelope, the paper containing the names of the persons to whom the Union was making gifts of champagne buckets, and the tearing from the invoice the names of the persons to whom the champagne buckets were to be delivered, the government proved that, at this critical period, Presser was calling, by telephone, the salesman who had sold the champagne buckets three years before in an effort to secure the duplicate copy of the invoice that had been torn, which, it afterward appeared, the salesman was unable to get from the seller.

Here was the turning point of the case—the government's proof of the

telephone calls from Hoffa in Washington to Presser in Cleveland, at the very time when Presser testified he was in Washington seeing Hoffa, and the further proof of the government of appellant's seeking information as to whether he could secure the duplicate invoice in question at a time when the original invoice had just been mutilated.

As Judge Paul Jones, the dean of federal judges, and the most experienced trial judge in the circuit, pointed out so fluently in his order denying a new trial: "Except for these circumstances, the jury may well have entertained a reasonable doubt as to defendant's guilt. But, no one that witnessed the event could have failed to sense the climatic effect of this evidence on the jury. It seemed to me that this evidence more than anything else influenced the jury's verdict."

We concur with Judge Jones in his opinion denying motion for judgment of acquittal or for a new trial, in the conclusion that the testimony of Senator McClellan was properly admissible in evidence; the trial court was correct in overruling objections based on various grounds to the testimony of Senator McClellan; and we agree with the District Court that there was nothing unlawful in the method used by the Committee in issuing the subpoena duces tecum. Moreover, appellant knew that the documents in question were wanted by the Committee, and, in such a case the existence of a valid subpoena is not vital to the charge of obstruction of justice. A review of the record does not disclose that appellant was in any way deprived of a fair trial by reason of misstatement and misquotation of evidence by counsel for the government. The evidence presented was amply sufficient to sustain a verdict of guilty. Other claimed errors are not meritorious.

In accordance with the foregoing, the judgment of the District Court is affirmed.