**UNITED STATES of America,**

**v.**

**Lyle C. HENDERSON, a/k/a "Skitch" Henderson, Defendant.**

**No. S–74 Cr. 866.**

United States District Court, S. D. New York.

Nov. 6, 1974.

Reargument Nov. 20, 1974.

Paul J. Curran, U. S. Atty. for the Southern District of New York, New York City, for United States of America; Thomas D. Edwards and David A. Cutner, Asst. U. S. Attys., of counsel.

Louis Bender, New York City, for defendant; Sandor Frankel, New York City, of counsel.

EDWARD WEINFELD, District Judge.

## MOTION TO DISMISS THE IN-DICTMENT

■ The mere fact that another, who allegedly committed the same offense for which the defendant has been indicted, has not also been indicted does not, by itself, establish the defense of selective prosecution. The defendant has the burden of establishing prima facie (1) that he has been singled out for prosecution, while others who committed the same offense have not generally been proceeded against; and (2) that the alleged discriminatory selection of him was motivated by vindictiveness or bad faith, such as impermissible considerations of race, religion or a purpose to prevent him from exercising his constitutional rights. United States v. Berrios, 501 F.2d 1207 (2d Cir., 1974). There has been no such showing here.

■ The request for a hearing to take testimony with respect to the person allegedly favored by nonprosecution —in effect, to try that alleged violation in this court—is so palpably a fishing expedition and a dilatory tactic as to require no other comment.

■ Finally, the simple and undeniable fact is that there are hundreds of prosecutions for income tax evasion, which essentially is the basic charge against the defendant here. The method allegedly used to achieve the violation does not change the nature of the offense.

The motion is denied.

1.  18 U.S.C. § 1341 (1970).

2.  26 U.S.C. § 7201 (1970).

3.  26 U.S.C. § 7206(1) (1970).

## MOTION TO DISMISS COUNTS
### 1, 2, 3 and 8

This is a motion by the defendant, named in an eight count indictment, to dismiss counts 1, 2, 3 and 8. Cutting through the technical and at times prolix allegations of the various counts of the indictment, the hard core of the charges against the defendant is an alleged attempt to evade the payment of substantial income taxes for the calendar years 1969 and 1970, by the use of back-dated and fraudulent documents and false statements designed to obtain the benefit of deductions for charitable donations as permitted under the law prior to July 25, 1969. Thus a basic charge of tax evasion in two years has proliferated into an eight count indictment which charges: (1) the use of the mails in furtherance of a scheme to defraud—counts 1, 2 and 3; [1] (2) an attempt to evade and defeat payment of a large part of the income taxes due for 1969 and 1970—counts 4 and 6; [2] (3) subscribing on each of the returns to false and fraudulent statements which defendant did not believe to be true—counts 5 and 7; [3] and (4) corrupt obstruction of the due administration of law by the submission to the Internal Revenue Service during an audit of a false, fictitious and back-dated document —count 8.[4]

The charges against the defendant revolve about deductions for charitable donations of musical scores and arrangements. Congress amended, effective July 25, 1969, the income tax laws, so that the creator of musical compositions could deduct charitable donations made by him of such compositions, only to the extent of his basis in the property,[5] and not the fair market value (as was the case prior to the amendment).

The first branch of the defendant's motion to dismiss is directed to the first three counts, the "mail fraud" counts. To put the motion in proper perspective,

4.  18 U.S.C. § 1505 (1970).

5.  Int.Rev.Code of 1954, §§ 170(e), 1221(3) (A).

it is desirable to analyze counts 4 and 6, the basic income tax evasion counts. Count 4, which relates to the 1969 calendar year, alleges that the defendant attempted to evade or defeat a large part of the income taxes owed by him and his wife for that year, by "signing" and "mailing" to the Internal Revenue Service an income tax return, which was false and fraudulent in that he claimed a personal deduction for the "donation of a music library to the University of Wisconsin consisting of 1,000 original music scores and arrangements of Skitch Henderson [the defendant] fair market value at date of gift of $350,000; " that to support this claim he annexed to the return a forged and fraudulent document which had been back-dated by one year; that the donation in fact had not been made in the year 1969 but thereafter, and defendant knew he was not entitled to the deduction if the donation occurred after July 25, 1969; further, that in any event, the donation did not have a fair market value of $350,000, but was virtually worthless, as he also knew. Count 6, based upon substantially the same allegations of fraudulent conduct, charges an attempt to evade or defeat payment of taxes due in 1970, by claiming a personal carry-over deduction for the donation.

We now turn to the three counts which charge violations of the mail fraud statute.[6] These charge that the defendant devised a scheme to defraud the Internal Revenue Service and to obtain money and property by means of false and fraudulent pretenses and representations; that it was part of the scheme that defendant would defraud the Internal Revenue Service by filing false and fraudulent personal income tax returns for the years 1969 and 1970, and by submitting additional false, fictitious, back-dated and fraudulent documents and statements to the Internal Revenue Service for the purpose of causing it to compute his income tax, and to audit and review his tax returns, on the basis of such back-dated and fraudulent documents; further, that it was a part of the scheme to defraud that defendant would obtain a tax deduction of $350,000 and a reduction of his income taxes over a period of years in a sum in excess of $100,000, to which he knew he was not entitled, by (1) falsely claiming the donation of his music library had a fair market value of $350,000, when it had a value of less than one percent of that amount; and by (2) falsely claiming that the donation had been completed prior to July 25, 1969, whereas it had not been completed until 1971, and defendant was therefore only entitled to a tax deduction of his basis in said property, which was virtually zero. Up to this point, these allegations in substance charge the same fraudulent conduct referred to in the tax counts, counts 4 and 6. However, the mail fraud counts set forth correspondence between the defendant and the University of Wisconsin and others, some of which were attached to the 1969 and 1970 returns and which contained the alleged false and fraudulent statements. Those counts continue with the final and inevitable allegations to conform to the mail fraud statute, that "for the purpose of executing and attempting to execute said scheme and artifice to defraud," the defendant mailed and caused to be mailed specific items, each of which is the subject of a separate count. Thus count 1 is based upon a letter dated December 31, 1969, mailed by the defendant to the University of Wisconsin, in which he proposed to donate the music library and stated, allegedly falsely, that Leonard Bernstein, Henry Mancini, Victor Alpert (librarian of the Boston Symphony and Boston Pops) and he were of the view that a fair evaluation per selection in the library was $650. Count 2 is based upon the mailing of the 1969 income tax return, to which was attached a memorandum dated January 12, 1969, one of the items it is charged the defendant knew was back-dated. This count repeats sub-

---

6. 18 U.S.C. § 1341 (1970).

stantially verbatim the allegations of false and fradulent statements in count 4, which charges an attempt to evade taxes due for 1969. Count 3, the final mail fraud count, is based upon the mailing of the 1970 income tax return. The thrust of the charge is defendant's claim for a personal carry-over deduction of $316,511 for the donation to the University of Wisconsin, when (just as the 1970 tax evasion count, count 6, alleges) he knew he was not entitled to that deduction, since the said donation had not been made during 1969. There can be no doubt, despite the lengthy historical allegations under the mail fraud charges, that the scheme to defraud charges the same fraudulent conduct by which it is alleged the defendant attempted to evade payment of his taxes for the years 1969 and 1970, as charged in counts 4 and 6; further, that it charges the same conduct which is made the subject of the false statement charges as to each tax year in counts 5 and 7. The only difference is the addition of the use of the mails to effectuate the alleged scheme to defraud.

▬▬ The defendant contends that the mail fraud statute was not intended by Congress to apply to a scheme to defraud the United States in an attempt to evade the payment of taxes, which is the scheme charged in counts 1–3.[7] I am inclined to agree. Independent research by the court has failed to reveal a single instance of such a prosecution, and the government has not suggested any prior indictment under similar circumstances. Of course, "the fact that there is no reported decision involving similar factual circumstances or legal theories is not determinative"[8] of the statute's applicability. The basic question is whether the mail fraud statute was "intended" by Congress to apply to the scheme set forth in counts 1–3.

Realistically, it is somewhat of a fiction to speak of whether Congress "intended" the mail fraud statute to apply to schemes to evade payment of federal income taxes. The predecessor to the present mail fraud statute was enacted in 1889,[9] almost twenty-five years before the adoption of the constitutional amendment authorizing the imposition of a federal income tax[10] and the passage of the predecessor of the present income tax laws.[11] Obviously there could have been no consideration in 1889 of the mail fraud statute with reference to laws enacted twenty-five years later under recently granted constitutional authority. However, such scant legislative history as there is indicates its general purpose. It was directed primarily at confidence men who engaged in schemes to sell counterfeit currency.[12] The bill as finally passed encompassed schemes to obtain money "by what is commonly called the 'sawdust swindle', or 'counterfeit money fraud', or by dealing or pretending to deal in what is commonly called 'green articles,' 'green coin,' 'bills', 'paper goods,' 'spurious Treasury notes,' 'United States goods', 'green cigars' . . . ."[13]

▬▬ It is beyond peradventure that the thrust of the statute was to protect the public, more precisely, the gullible public, against the various fraudulent schemes that the cunning of the trick-

---

7. The government, in opposing the defendant's motion, suggests that the mail fraud counts of the indictment are also predicated on a scheme to defraud the University of Wisconsin; however, the indictment does not allege a scheme to defraud the University or that the University was defrauded, nor does it indicate that the University, which received the musical scores as a gift, suffered any pecuniary or property injury. See Hammerschmidt v. United States, 265 U.S. 182, 188–189, 44 S.Ct. 511, 68 L.Ed. 968 (1924).

8. Parr v. United States, 363 U.S. 370, 391, 80 S.Ct. 1171, 1183, 4 L.Ed.2d 1277 (1960).

9. Act of March 2, 1889, ch. 393, 25 Stat. 873.

10. U.S.Const. amend. XVI.

11. Act of Oct. 3, 1913, ch. 16, § 2, 38 Stat. 166.

12. See H.R.Rep.No.1501, 50th Cong., 1st Sess. (1888); S.Rep.No.2566, 50th Cong., 2d Sess. (1889).

13. Act of March 2, 1889, ch. 393, § 1, 25 Stat. 873.

ster could devise.[14] Over the years the public has been subjected to fraudulent schemes beyond those specifically referred to in the statute, and resourceful prosecutors have used the mail fraud statute effectively and properly against all those schemes. By 1949, the mail fraud statute had been applied to so many innovative schemes to defraud that such terms as "sawdust swindle," "green articles" and "green cigars" were deleted as "the obsolete argot of the underworld," and the statute was streamlined to its present form.[15]

As Mr. Chief Justice Burger recently observed, the mail fraud statute "has traditionally been used against fraudulent activity as a first line of defense. When a 'new' fraud develops—as constantly happens—the mail fraud statute becomes a stop-gap device to deal on a temporary basis with the new phenomenon, until particularized legislation can be developed and passed to deal directly with the evil." [16] The mail fraud provision encompasses schemes to defraud the "guileless members of the public with worthless securities, patent medicines, deeds to arid lands and inaccessible tracts of land, or other empty promises of instant wealth and happiness." [17]

The sweep of the statute is broad indeed, but the entire course of the statute's application has been to schemes of a different nature from the scheme alleged in this indictment. The use of the mail fraud provision has been generally confined to schemes of a type designed to defraud members of the community at large, in the sale of commodities and services, rather than schemes to defraud the government, as is involved in this case.[18] The court is of the view that the statute does not include within its proscription a scheme to defraud the Internal Revenue Service in the collection of income taxes. There is in such a case no need to use the mail fraud statute as a "stopgap device" until "particularized legislation" is enacted "to deal directly with the evil," for Congress has enacted legislation that affords adequate protection of the public interest in the collection of income taxes.

Chapter 75 of the Internal Revenue Code of 1954—"Crimes, Other Offenses and Forfeitures"—covers all types of tax offenses. It includes provisions directed at (1) an attempt to evade or defeat tax; [19] (2) willful failure to collect or pay over tax; [20] (3) willful failure to file returns, supply information, or pay tax; [21] (4) a fraudulent statement or failure to make statement to employees; [22] (5) a fraudulent withholding exemption certificate or failure to supply information to employers; [23] (6) fraud and false statements made under declaration of perjury; [24] (7) fraudu-

14. *See* Durland v. United States, 161 U.S. 306, 314, 16 S.Ct. 508, 40 L.Ed. 709 (1896); United States v. Owen, 231 F.2d 831 (7th Cir.), cert. denied, 352 U.S. 843, 77 S.Ct. 42, 1 L.Ed.2d 59 (1956).

15. Reviser's Notes, 18 U.S.C. § 1341, H.R. Rep.No.304, 80th Cong., 1st Sess. (1947).

16. United States v. Maze, 414 U.S. 395, 405–406, 94 S.Ct. 645, 651, 38 L.Ed.2d 603 (1974) (Burger, C. J., dissenting).

17. *Id.* at 407–408, 94 S.Ct. at 652.

18. The few cases in which schemes to defraud governmental units have been held to constitute schemes to defraud within the meaning of the mail fraud provision have involved the purchase or sale by the government of commodities or services. *See* Bradford v. United States, 129 F.2d 274 (5th Cir. 1942) (scheme to defraud a city by using political influence to induce the city to purchase buses at exorbitant prices); Shushan v. United States, 117 F.2d 110 (5th Cir. 1941) (scheme to secure a public contract on more favorable terms than otherwise available by bribing a public official); Hartwell v. United States, 107 F.2d 359 (5th Cir. 1939) (fraudulently overstating the purchase price of property, for the purpose of obtaining a loan for the purchaser and securing insurance of that loan by the Federal Housing Administration).

19. 26 U.S.C. § 7201 (1970).

20. 26 U.S.C. § 7202 (1970).

21. 26 U.S.C. § 7203 (1970).

22. 26 U.S.C. § 7204 (1970).

23. 26 U.S.C. § 7205 (1970).

24. 26 U.S.C. § 7206 (1970).

lent returns, statements, or other documents;[25] (8) attempts to interfere with administration of internal revenue laws,[26] as well as other provisions touching upon alleged tax offenses.

Four of the eight counts of the indictment are based on two of the foregoing provisions: (1) section 7201, under which the defendant is charged in two counts with attempts to evade or defeat taxes; and (2) section 7206(1), under which he is charged in two counts with submitting fraudulent statements verified to be made under penalty of perjury. The former charges carry a term of imprisonment up to five years or a fine of up to $10,000, or both, upon each count; the latter carry a term of imprisonment up to three years or a fine up to $5,000, or both, upon each count. The congressional purpose to confine tax violations to the prohibitions and sanctions contained in the comprehensive Internal Revenue Code statutory scheme is implicit in a holding by our circuit in United States v. White[27] that upon a conviction for attempting to evade or defeat taxes under section 7201 of Title 26, the evidence of which also proves the fraudulent conduct required to sustain a conviction on a separate charge of filing a perjured income tax return under section 7206 of that Title, cumulative sentences cannot be imposed. The use of the mail fraud statute in this case, bottomed upon essentially the same allegations as those required to sustain the tax evasion and perjury counts brought under the appropriate provisions of the Internal Revenue Code, would frustrate the court's holding in *White* by permitting pyramiding of sentences in the event of a conviction.

The policy of the prosecution of fragmentizing charges which center about the filing of an alleged false tax return,

by applying the mail fraud statute under three separate counts, two of which include the mailing of the very income tax returns at issue, with the result that a conviction would permit multiple sentences reaching staggering, if not utterly unrealistic, years of imprisonment, has its outer limits. In my view the outer limits were set by Congress by grouping the various tax violations and delinquencies in the one chapter of the Internal Revenue Code, referred to as the "hierarchical system of sanctions,"[28] which has been recognized by the Supreme Court as "the capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law and to provide a penalty suitable to every degree of delinquency."[29]

█ The counts of the indictment, based upon the Internal Revenue Code provisions referred to above, "provide a penalty suitable to every degree of delinquency" with which the defendant is charged; the mail fraud counts were impermissibly used in an attempt to reach the same offenses and to increase penalties in the event of conviction, beyond the intent of Congress. Therefore, counts 1, 2 and 3 are dismissed.

The defendant further moves to dismiss count 8 of the indictment, which charges that the defendant corruptly endeavored to obstruct and impede the due and proper administration of the law in a proceeding before the Internal Revenue Service, by causing to be presented a back-dated document during an audit of his 1969 income tax return. The charge is grounded upon and tracks the language of 18 U.S.C., section 1505, a provision of general applicability to the obstruction of proceedings before all governmental departments and agencies.

25. 26 U.S.C. § 7207 (1970).

26. 26 U.S.C. § 7212 (1970).

27. 417 F.2d 89 (2d Cir. 1969); *see also* United States v. Lodwick, 410 F.2d 1202 (8th Cir. 1969).

28. Sansone v. United States, 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965).

29. Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943); *see also* United States v. Bishop, 412 U.S. 346, 359, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973).

However, in this instance, too, the Internal Revenue Code, in the section defining various crimes with respect to the Internal Revenue Service, has a provision proscribing "Attempts to interfere with administration of internal revenue laws,"[30] which, while not in haec verba, parallels section 1505 of Title 18. Just why the government chose to base the charge upon the provision in the Criminal Code rather than upon the Internal Revenue Code, is not clear, unless it be that the penalty upon the conviction of the former is five years imprisonment, whereas under the latter it is three years. In any event, consistent with the court's main ruling, the court is of the view that count 8 must be dismissed, with leave to resubmit to the grand jury.

The government is directed, in the event appellate review is sought of the determination here made, to apply forthwith to the Court of Appeals for expedited consideration of its appeal in order to avoid if possible, delay of the trial on the remaining counts, now set for December 2, 1974, and already too long delayed as a result of consensual arrangements between the prosecution and the defense.

## ON MOTION FOR REARGUMENT

Reference is made to this court's decision wherein count 8 of the indictment was dismissed with leave to resubmit to the grand jury. The basis of the court's ruling as to that count, which was grounded on 18 U.S.C., section 1505 (Obstruction of proceedings before departments, agencies . . .),

was that the Internal Revenue Code contained a parallel obstruction provision, 26 U.S.C., section 7212, and consequently the charge should have been based thereon.

The government now moves for reargument, contending that it cannot resubmit the case to the grand jury under 26 U.S.C., section 7212, because that section "apparently applies only to acts or threats of physical violence," and no such claim is made in the instant case. Accordingly, it urges that absent any other applicable criminal sanction in the Internal Revenue Code, count 8 was properly grounded on the general criminal statute, 18 U.S.C., section 1505.

Upon the original argument of the motion to dismiss, neither the government nor the defense addressed themselves to the issue of the applicability of 26 U.S.C., section 7212. Rather, their contentions centered about the defendant's claim that the count should have been grounded on 26 U.S.C., section 7207, a misdemeanor provision, which proscribes conduct relating to fraudulent returns, statements or other documents.

The language of section 7212, insofar as here pertinent,[1] although not in haec verba, parallels the pertinent language of section 1505 of Title 18.[2] Both sections, and the more comprehensive section 1503, extend to those who "corruptly" endeavor to obstruct, as well as those who endeavor to do so by threats or force. Under sections 1503 and 1505 the word "corruptly" has been given a broad and all-inclusive meaning;[3] both sections have been held to encompass obstruction in the absence of force or

---

30. 26 U.S.C. § 7212 (1970).

1. "Whoever . . . corruptly *or* by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the *due administration of this title,* shall . . . ." be guilty of a crime. [emphasis supplied]

2. "Whoever corruptly, *or* by threats or force, or by any threatening letter or communication *influences, obstructs, or impedes or en-*

*deavors to influence, obstruct, or impede the due and proper administration of the law under which such proceeding is being had before such department or agency of the United States* . . . ." shall be guilty of a crime. [emphasis supplied]

3. *See* Bosselman v. United States, 239 F. 82, 86 (2d Cir. 1917) (interpreting the word "corruptly" in the predecessor provision to section 1503).

threats of force.[4] Why "corruptly" does not have the same meaning in the Internal Revenue provision as in sections 1503 and 1505 is not clearly articulated by the government. No case has specifically held that section 7212 requires the use of force as an essential element. The government, however, stresses that thus far all prosecutions thereunder have involved the use of force, violence or threats, from which it apparently infers it is so restricted. Additionally, it contends the legislative history of section 7212 indicates that its purpose was to prevent intimidation or impeding of Internal Revenue Service agents by force or threats of force.[5] These arguments are not altogether persuasive, as indeed the prosecution acknowledged upon argument of this motion. However, it still deems the applicability of section 7212 uncertain absent a charge of threats or force, and since the section has not yet stood the test of appellate review, the prosecution prefers the certainty of 18 U.S.C., section 1505.

While this court remains of the view that section 7212 of Title 26 is applicable, since the prosecution entertains a doubt, and in the event of conviction it has the burden of upholding it, the motion for reargument is granted, and the eighth count is reinstated. The balance of the motion which seeks reargument of the first three counts, the mail fraud charges, is denied.

---

4. *E. g.*, United States v. Alo, 439 F.2d 751 (2d Cir.), cert. denied, 404 U.S. 850, 92 S. Ct. 86, 30 L.Ed.2d 89 (1971) (§ 1505); United States v. Fruchtman, 421 F.2d 1019 (6th Cir.), cert. denied, 400 U.S. 849, 91 S. Ct. 39, 27 L.Ed.2d 86 (1970) (§ 1505); Stein v. United States, 337 F.2d 14 (9th Cir. 1964) (§ 1505); United States v. Batten, 226 F.Supp. 492, 494 (D.D.C.1964), cert. denied, 380 U.S. 912, 85 S.Ct. 898, 13 L.Ed.2d 799, rehearing denied, 381 U.S. 930, 85 S.Ct. 1557, 14 L.Ed.2d 688 (1965) (§ 1505); United States v. Presser, 292 F.2d 171 (6th Cir. 1961); 187 F.Supp. 64 (D.Ohio 1960) (§ 1505); United States v. Cohn, 452 F.2d 881 (2d Cir. 1971) cert. denied, 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972) (§

1503); United States v. Solow, 138 F.Supp. 812 (S.D.N.Y.1956) (§ 1503).

5. The government refers to the House and Senate Reports on the 1954 Internal Revenue Code, 1954 U.S.Code Cong. & Admin. News, pp. 4574, 5254, 5344. These references do not entirely support the government's position since they simply state, without discussion, that the section provides for the punishment of threats or threatening acts against agents of the Internal Revenue Service, which of course it does. Significantly, the reports also contain the following comment: "This section will also punish the corrupt solicitation of an internal revenue employee." Clearly there the element of threats or threats of force is not involved.