## UNITED STATES of America
### v.
### James C. LaBAR et al.
### Crim. Nos. 80–00130–01 to 80–00130–06.

United States District Court,
M. D. Pennsylvania.

Jan. 27, 1981.

---

Gordon A. D. Zubrod, Asst. U. S. Atty., Scranton, Pa., for the U. S.

Plato Cacheris, Washington, D. C., for James C. LaBar.

Jack B. Stevens, Alexandria, Va., for Donald J. Romanowski.

Barnet D. Skolnik, Washington, D. C., for Robert F. Conner and Petroleum Suppliers, Inc.

William W. Warren, Jr., Scranton, Pa., for LaBar Transp. Corp. and LaBar Enterprises, Inc.

## OPINION

MUIR, District Judge.

On November 20, 1980, a grand jury for the Middle District of Pennsylvania returned a 25-count indictment charging three individuals and three corporations with conspiracy, mail fraud, and the filing of false statements in connection with an alleged scheme to defraud the United States Postal Service by claiming contract adjustments based on fraudulently inflated fuel costs. On December 22, 1980, the Defendants filed a motion to dismiss the indictment accompanied by a brief and numerous exhibits. The Government filed a brief in opposition to the motion and supporting exhibits on January 12, 1981. The Defendants filed a reply brief on January 19, 1981. The Defendants raise 11 reasons why some or all of the counts of the indictment should be dismissed. Because the Court concludes none of the Defendants' contentions has merit, the motion to dismiss will be denied.

The Defendants claim they are victims of selective prosecution in violation of equal protection standards guaranteed by the Fifth Amendment. Selective prosecution is ground for the dismissal of an indictment if the Defendants are able to prove that others similarly situated were not similarly prosecuted and that the Defendants were selected for prosecution for improper reasons such as to punish them for the exercise of their constitutional rights or to deter them from exercising such rights. See United States v. Torquato, 602 F.2d 564 (3d Cir.), cert. denied, 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 307 (1979). Because of the reluctance of the courts to interfere with legitimate prosecutorial discretion a defendant must adduce "[s]ome credible evidence ... indicating that the government intentionally and purposefully discriminated against the defendant by failing to prosecute other similarly situated persons" before he is entitled to an evidentiary hearing on a claim of selective prosecution. United States v. Torquato, 602 F.2d at 570. At the outset, it is important to describe the acts that the Defendants are alleged to have

committed in order to compare that conduct to that of others who the Defendants claim are similarly situated.

Defendant LaBar Transportation Corporation held as many as 26 mail hauling contracts from the United States Postal Service. The indictment charges that the Defendants created Petroleum Suppliers, Inc. and that Petroleum Suppliers had no legitimate business purpose. According to the indictment, fuel oil purchases for LaBar Transportation were invoiced by various suppliers to Petroleum Suppliers which then in turn re-invoiced the fuel oil to LaBar Transportation at fraudulently inflated prices. LaBar Transportation then sought price adjustments on its contracts from the Postal Service which were granted. It is also alleged that the Defendants concealed from the Postal Service the alleged interrelationship of the other Defendants to Petroleum Suppliers and the fact that the other Defendants controlled Petroleum Suppliers. In effect, the Government charges that Petroleum Suppliers was utilized by the Defendants as a means to provide documentation for fuel price increases when in fact LaBar Transportation purchased or could have purchased the same fuel for lower prices.

■ The Defendants seek to identify the class of persons similarly situated as those mail haulers that purchased fuel from fuel oil companies owned by the mail hauler. In support of their contention that such contractors exist and have not been prosecuted, the Defendants submit transcripts of interviews with mail haulers that were conducted by the United States Attorney. These transcripts, exhibits A through D, show that other mail haulers buy their fuel from fuel supply companies that are owned by the hauler, operate out of the same offices and with the same personnel as the hauler, mark-up the price of the fuel so as to include not only overhead but profit and pass the mark-up along to the Government. The transcripts of interviews reveal that surface similarities between those business activities and what the Defendants are alleged to have done are outweighed by significant differences. None of the four other haulers attempted to hide from the Postal Service the relationship each had with its fuel sup-

ply company. At least three of the fuel supply companies had significant expenses such as fuel storage tanks, fuel pumps, trucks, and buildings. Finally, three of the four fuel supply companies sold to other customers and charged competitive prices on all fuel sold. Because of these differences between the other haulers and the Defendants, the Court concludes that the Defendants are not similarly situated to other haulers who have not been prosecuted.

The affidavit of Travis Henry, a former General Manager of the Transportation Division, Bulk Mail Department of the Postal Service, relied on by the Defendants, is not either alone or taken together with exhibits A–D evidence of selective prosecution. Mr. Henry's affidavit states that in 1977, two years after he retired from the Postal Service, he advised Mr. LaBar that it was permissible under Postal Service policy for postal contractors to purchase fuel from subsidiary companies. He also told Mr. LaBar of four companies who conducted their businesses in that way. This affidavit adds nothing to the Defendants' position. The Government does not take the position that it is illegal for contractors to purchase fuel from subsidiary corporations. It is the Government's position, however, that such transactions present special dangers of costs being passed on to the Government which are inflated either unintentionally, or, as alleged in the indictment, fraudulently and that the Postal Service is more vigilant in its examination of such relationships than it is when contractors purchase fuel from independent suppliers. It bears emphasizing that Defendants are not being charged with purchasing fuel from a controlled fuel supplier; rather, they are being charged with fraudulently inflating the price of fuel and obtaining reimbursement from the Postal Service by reason of such fraudulent representations and concealing their relationship with the fuel supplier.

The Defendants argue in their reply brief that the Government may not rely on allegations in the indictment of fraudulent price increases and the concealment of the relationship of Petroleum Suppliers to the

other Defendants to show that the Defendants are not similarly situated to other contractors. No authority is offered for this assertion and the Court does not find the argument persuasive. If the indictment is not permitted to serve as the basis for defining the class of persons allegedly similarly situated, the hearing on the claim of selective prosecution would have to be of sufficient scope to determine what in fact the Defendants did. Such a hearing would be indistinguishable in scope from a criminal trial. The issue to be determined at any evidentiary hearing is not whether the Defendants did the acts alleged in the indictment but whether the Government has failed to prosecute others who performed acts similar to the acts alleged in the indictment. Before the Defendants are entitled to prove that is the case, they must produce credible evidence of others who did what the Defendants are alleged to have done. As indicated above, the Defendants have failed to do so.

Not only have the Defendants failed to adduce "credible evidence" that others similarly situated have not been prosecuted, they have also failed to adduce evidence that the Government is proceeding against them for improper reasons. The Defendants accurately state that the second element for selective prosecution is that the "selection of [the defendant] for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir., 1974). *See United States v. Berrigan*, 482 F.2d 171 (3d Cir., 1973). The Defendants claim they have been prosecuted because of administrative appeals filed by the Defendants. It is the Defendants' position that the Postal Service, having become annoyed with these appeals, decided to seek criminal prosecution of the Defendants.

The Defendants support their theory of alleged bad faith by affidavits and exhibits detailing appeals taken by LaBar since 1978. The Government does not dispute the fact that LaBar has filed numerous appeals of decisions relating to his contracts. The

Defendants' showing, however, is not sufficient to warrant an evidentiary hearing.

LaBar's administrative appeals were from decisions by the Transportation Management Office of the Mail Processing Department. That office, however, has no control or influence over the Postal Inspection Service and it is the latter that conducts investigations. The Mail Processing Department, when it became suspicious of the fuel increases sought by the Defendants, referred the matter to the Postal Inspection Service for investigation, consistent with the separation of functions in the Postal Service. *See* 39 CFR §§ 224.4 and 224.7; affidavit of James V. Jellison, Government Exhibit 10.

The affidavit of C. Neal Benson, Deputy Postmaster General of the United States Postal Service, who served as Chief Postal Inspector during the period of the investigation, states that in March, 1978 Mr. Benson received two memoranda from Mr. Jellison mentioning possible fraud by LaBar, including the fact that three firms affiliated with LaBar as well as Petroleum Suppliers, Inc. had the same mailing address. On May 11, 1978 Mr. Benson sent a memorandum to the Regional Chief Inspector for the Eastern Region directing that all 26 of LaBar Transportation's contracts be audited. Mr. Benson's affidavit further states that referral of information such as was done by Mr. Jellison is routine and that it is up to the Postal Inspection Service to determine whether to investigate and how to investigate. Further, the individual postal inspector to whom an investigation is assigned decides how to proceed and also decides whether to present the case to the United States Attorney for his consideration, and it is the United States Attorney's decision alone whether to seek an indictment from a grand jury.

Mr. Benson's affidavit is supported by the affidavit of David P. Cyr, the postal inspector who conducted the LaBar investigation. Mr. Cyr states that in accordance with the policies and practices of the Postal Inspection Service, his decision to refer the case to the United States Attorney was made after

discussion with other members of his investigative team and that no one outside of the seven investigators working under his direction participated in or in any way influenced the decision to refer the case to the United States Attorney.

The Government has also presented an affidavit of Robert A. Scherr, Assistant General Counsel, Transportation Division, Law Department, United States Postal Service. Mr. Scherr's affidavit sets forth a summary of contract disputes between the Postal Service and LaBar and appeals taken by LaBar. The affidavit also states that the Postal Service has since 1970 a Postal Service Board of Contract Appeals and that the Postal Service's dispute resolution procedures are similar to those of other Government agencies. The affidavit also discloses that disputes with contractors and appeals by contractors from adverse decisions by the Transportation Office are routine.

Finally, Government Exhibit 15 in opposition to the motion is the affidavit of Jack R. Stedman, Senior Postal Inspector for Contract Audits. The affidavit discloses that beginning in 1976 comprehensive investigations were undertaken of major highway mail contractors. The Inspection Service's policy was to devote primary attention to large contractors who received major expenditures of postal funds. The LaBar companies first came to Mr. Stedman's attention in 1977 when a Regional Postmaster General requested a review to determine the reasonableness of cost increases for insurance claimed by Mr. LaBar. As a result of that audit, a decision was made to continue the inquiry into Mr. LaBar's cost claims. This work was underway when Mr. Jellison wrote his memoranda to the Postal Inspection Service in March, 1978 concerning possible fraud relating to increased costs for fuel.

Although Defendants maintain in their reply brief that a hearing is needed to question the handling of the investigation, they have produced no evidence to contradict the affidavits detailing the lack of involvement by the Mail Processing Department in the investigation. The Defendants have failed to present any credible evidence to show that the decision to investigate the Defendants by the Postal Service or more importantly that the decision by the United States Attorney to seek an indictment was motivated by any impermissible considerations. The evidence of record discloses only a routine investigation handled in the usual manner. Because the Defendants have failed to "adduce credible evidence" in support of their claim of selective prosecution, the motion to dismiss for that reason will be denied without a hearing.

■ The Defendants' second claim is that the conduct described in the indictment is legal and that, consequently, the indictment fails to allege an offense. This contention is without merit. The Defendants would have the Court believe that the indictment alleges only that the Defendants purchased fuel from a controlled fuel supply company and passed along the increased cost to the Government. The indictment clearly charges that the fuel prices passed along were fraudulently inflated and that that fraudulent conduct was engaged in knowingly by the Defendants for the purpose of defrauding the Government, that the Defendants knowingly filed false statements with the Government, and the Defendants used the mails to execute this scheme to defraud and that the Defendants conspired to do the aforementioned crimes. These allegations allege offenses against the United States and are not subject to dismissal.

■ The Defendants' third contention is similarly devoid of merit. The Defendants contend that the indictment violates due process because the Defendants relied upon the advice of postal officials that the conduct they engaged in was legal. None of the exhibits presented to the Court in support of the motion demonstrates that the Postal Service told the Defendants that they could submit fraudulently inflated fuel invoices and could knowingly conceal the relationship between LaBar Transportation and Petroleum Suppliers, Inc. The assurances relied on by the Defendants were from private individuals and a former employee of the Postal Service and related only to buying fuel from a subsidiary.

These facts are clearly distinguishable from those in *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), in which a person was found in contempt for failing to respond to a question posed by a public commission when he asserted his Fifth Amendment privilege against self-incrimination as he had been advised by that commission he was able to do and *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), in which a conviction for demonstrating near a courthouse was reversed because the sheriff told the defendant he could stand across the street and then arrested him. As indicated above, the indictment alleges fraud; it does not seek to make purchases of fuel from a company allegedly controlled by the Defendants a crime.

■ The Defendants' fourth argument is that the indictment violates due process because Postal Service regulations mentioned in the indictment and promulgated under 39 U.S.C. § 5005(b)(1) are unconstitutionally vague and are contradictory. One pronouncement by the Postal Service, § 19–316.21 of the Postal Contracting Manual, limits cost adjustments to circumstances over which the contractor has "little if any control" while another, Regional Instructions, Filing No. 523, Part II(B) and Part VIII (G) uses the phrase "little or no control". The Court does not perceive any significant difference in the formulations used nor does the Court view the two pronouncements to be unconstitutionally vague as expressions of Postal Service policy concerning the basis under which it acts on requests for cost increases. The Defendants' argument rests on the false premise that they are being charged with violating Postal Service regulations or that those regulations are instrumental in defining their alleged fraudulent scheme. To the contrary, the Defendants are being charged with conspiracy, mail fraud and making false statements in connection with their allegedly fraudulent procurement of contract adjustments and their concealment of an alleged relationship between LaBar Transportation Corporation and Petroleum Suppliers, Inc. The alleged vagueness or contradictory nature of official pronouncements relied on by the Defendants may be an issue in determining whether the Defendants had an intent to defraud but they do not affect the legality of the indictment.

■ Relying primarily on *United States v. Henderson*, 386 F.Supp. 1048 (S.D.N.Y. 1974), the Defendants argue that counts 2 through 22 must be dismissed because the mail fraud statute, 18 U.S.C. § 1341, cannot properly be used to prosecute a scheme to defraud the United States. The district court's decision in *Henderson* has never been adopted by the Second Circuit and has been rejected in two Circuits. *United States v. Weatherspoon*, 581 F.2d 595 (7th Cir. 1978); *United States v. Miller*, 545 F.2d 1204, 1216 n. 17 (9th Cir. 1976). In addition, *Henderson* was based in large part on the court's determination that special anti-fraud provisions of the Internal Revenue Code pre-empted § 1341. The Seventh Circuit in *Weatherspoon* specifically held that § 1001 did not have that effect. The Third Circuit has cited the *Henderson* decision but has not adopted it. *United States v. Tarnopol*, 561 F.2d 466 (1977).

The Defendants' argument and their citation to the legislative history of the mail fraud statute do not convince the Court that it may not be used to prosecute frauds against the Government even though the same acts may be subject to prosecution under 18 U.S.C. § 1001. To obtain a conviction under the mail fraud statute, the Government must prove elements not required under 18 U.S.C. § 1001. The Court sees no reason to restrict the plain language of § 1341 to preclude its use in this case. *See United States v. Weatherspoon*, 581 F.2d 595 (7th Cir. 1978).

■ The Defendants' sixth contention is that Counts 2, 3, 5, 6, 7 and 9 fail to state an offense under 18 U.S.C. § 1341 because each document referred to in each of those counts contained a notation at the bottom as follows:

˙ U. S. Code Title 18 (Crimes and Criminal Procedures) Section 1001 makes it a criminal offense to make a willfully false statement or representation herein.

The Defendants argue that by placing such a designation on the forms, the Government limited itself in its choice of criminal statutes to be enforced if the documents contain a false statement.

The Defendants' estoppel argument fails to convince the Court. They cite no case in support of that position nor have they established that in filing the statements they detrimentally relied on the alleged representation that they would only be prosecuted under 18 U.S.C. § 1001. Moreover, the notation appearing at the bottom of each form does not indicate that § 1001 is the only possible section that might support a criminal prosecution. The Court, therefore, rejects the estoppel claim raised by the Defendants.

 The Defendants' seventh argument is that Counts 23, 24 and 25, all of which charge violations of 18 U.S.C. § 1001, must be dismissed because venue is not proper in this district.

Section 1001 makes it a crime knowingly and willfully to falsify or conceal a material fact or make a false statement in any manner "within the jurisdiction of any department or agency of the United States." In *Travis v. United States*, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), the defendant was charged with making a false statement in violation of § 1001 in that he allegedly filed a non-Communist affidavit pursuant to § 9(h) of the National Labor Relations Act that was false. The false document had been prepared in Colorado but filed in the District of Columbia. The Supreme Court held that proper venue was in the District of Columbia where the affidavit was filed.

*Travis* is the only case brought to the Court's attention in which it has been held that the only proper venue for a charge of violating § 1001 is in the district in which the allegedly false document was filed. Other cases involving § 1001 have relied on the general venue provision, 18 U.S.C. § 3237(a), to the effect that venue is proper in any district in which a crime was begun or completed when the crime was begun in one district and completed in another. *See United States v. Herberman*, 583 F.2d 222

(5th Cir. 1978); *United States v. Ruehrup*, 333 F.2d 641 (7th Cir.), *cert. denied*, 379 U.S. 903, 85 S.Ct. 194, 13 L.Ed.2d 177 (1964); *Imperial Meat Co. v. United States*, 316 F.2d 435 (10th Cir.), *cert. denied*, 375 U.S. 820, 84 S.Ct. 57, 11 L.Ed.2d 54 (1963). Subsequent cases construing *Travis* have emphasized that the case turned on the peculiar wording of § 9(h) of the National Labor Relations Act. That section did not require that the non-Communist affidavits be filed; rather, it provided that the National Labor Relations Board could take no action on behalf of a union unless such statements were filed. The Court construed the National Labor Relations Act to mean that until non-Communist affidavits were filed there was no "matter within the jurisdiction" of the National Labor Relations Board within the meaning of § 1001. *Travis v. United States*, 364 U.S. at 635–36, 81 S.Ct. at 361.

The Defendants contend that like the case in *Travis* there was no matter within the jurisdiction of the Postal Service until the various requests for contract adjustments were filed by the Defendants. It is the Court's view that the Defendants too narrowly construe the statutory language of § 1001. It is more appropriate that for the purposes of § 1001 the term "jurisdiction" as it relates to this case means all matters relating to the contracts between LaBar and the Postal Service. While it is true that the Postal Service could not pursuant to its regulations adjust the contract price upward until the contractor made such a request, LaBar's performance of the contract and disputes arising therefrom were within the jurisdiction of the Postal Service from at least the time the contract was signed. The Defendants point to no statutory or regulatory provision that limits the Postal Service's jurisdiction in the way that § 9(h) of the National Labor Relations Act limited the jurisdiction of the National Labor Relations Board. The Court, therefore, concludes that the general venue statute, 18 U.S.C. § 3237(a), is applicable and that for the purposes of this prosecution the offenses may be said to have commenced with the mailing of the documents in ques-

tion and such mailings are alleged to have occurred within the district; consequently, the Court concludes that venue is proper in this district as to Counts 23–25.

As an eighth ground why the indictment should be dismissed, the Defendants claim that the indictment is both multiplicitious and duplicitious. For purposes of analysis, the indictment can be divided into four parts. Count 1 charges the Defendants with conspiring to violate 18 U.S.C. §§ 1001 and 1341. Counts 2–12 charge violations of the mail fraud statute, 18 U.S.C. § 1341, each count relating to a separate mailing by the Defendants. Counts 13–22 charge further violations of 18 U.S.C. § 1341, each count relating to mailed matter received by the Defendants. Counts 23, 24 and 25 each set forth an alleged violation of 18 U.S.C. § 1001, each alleging that a particular document filed by the Defendants with the Postal Service contained false statements. These 25 separate charges, however, are set forth in an indictment each count of which, with the exception of Counts 23–25, incorporates by reference allegations set forth in other counts. It is the result of this method of drafting that gives rise to the Defendants' contentions that many of the counts are duplicitious in that they charge more than one offense and that the indictment is multiplicitious in that the same offense is charged in more than one count.

■ Count 1, the conspiracy count, incorporates by reference as overt acts in furtherance of the conspiracy "each of the acts recited in each of the succeeding counts of this indictment." The Defendants argue that by so doing, Count 1 charges the substantive violations set forth in each of those succeeding counts. This contention is without merit. The second paragraph of Count 1, which appears on page 7 of the indictment, is the paragraph that charges that the Defendants conspired to violate 18 U.S.C. §§ 1001 and 1341. The remaining paragraphs of that count set forth in more detail the alleged scheme of the Defendants. The portions of the succeeding counts that are incorporated by reference are only the acts alleged in each count, not the portions of each count that charge substantive violations of the law. A conspiracy count is

not rendered duplicitious because it sets forth as overt acts conduct which constitutes a crime and for which the defendants have been indicted so long as it does not charge the commission of the substantive crime in the same count. Count 1, therefore, is not duplicious.

■ The Defendants allege that Counts 2–12 are multiplicious in that they recharge the conspiracy alleged in Count 1 and that they are duplicitious in that they charge both mail fraud and conspiracy. Counts 2–12, however, do not incorporate by reference that portion of Count 1 that charges a conspiracy. The only portions incorporated by reference are those that set forth what the Defendants are alleged to have done in furtherance of the conspiracy. The allegations in paragraphs 1, 2, 3 and 5 on pages 8 and 9 of Count 1 that are incorporated by reference into Counts 2–12 are essentially identical to those found in paragraphs 3, 5 and 7 on pages 14 through 16 of Counts 2–12. At most, the allegations incorporated by reference are repetitive and surplusage. See F.R.Cr.P. 7(d). The incorporation of those allegations into Counts 2–12 does no more than allege that the Defendants in fact carried out the scheme that Count 1 alleges they conspired to create. Since Counts 2–12 do not re-charge the conspiracy alleged in Count 1, the indictment is not multiplicious and those counts do not charge more than one offense and are not duplicitious.

The Defendants raise essentially the same contentions with respect to Counts 13–22. The first paragraph of those counts incorporates by reference the same five paragraphs of Count 1 that are incorporated by reference into Counts 2–12 as well as the first eight paragraphs of Count 2. Neither incorporation includes the allegations that charge the Defendants with a crime. The effect of these incorporations is to set forth again the scheme that the Defendants are alleged to have carried out. Since each mailing in furtherance of a scheme to defraud is a separate offense, each of Counts 13–22 states a separate offense and, therefore, is not multiplicitious. Since the

counts charge only one offense they are not duplicitious. It is obvious from a reading of the indictment that it is divided as it has been because Counts 2–12 relate to mailings by the Defendants while Counts 13–22 relate to receipt of mail by the Defendants. Each such act, however, was in furtherance of the single scheme to defraud that is set forth in Count 2 and incorporated by reference into Counts 13–22. The indictment is drafted in a complex way, that complexity, however, does not render it subject to dismissal. As indicated above the portion of Count 1 that is incorporated into Counts 2–12 may be surplusage, but each count charges but a single offense and no count charges an offense that is charged in any other count.

The Defendants do not argue that Counts 23–25 share the same vices of the first 22 counts. Each of the last three counts of the indictment refers to the specific filing of a false statement by the Defendants and not one of those counts incorporates by reference any of the preceding counts.

■ The antepenultimate attack on the indictment is that Count 1 fails to allege an overt act. The Defendants contend that the 12 overt acts alleged are "patently vague and conclusory. Moreover, they generally fail to specify which particular Defendant committed an act and do not particularize the date of such occurrences."

The short answer to Defendants' contention is that since Count 1 incorporates by reference each act set forth in the remaining counts, an overt act has been sufficiently alleged. For example, Count 4 alleges that on August 29, 1977 a letter signed by or bearing the authorized signature of Defendant LaBar was sent to Mr. J. F. Bergin, Manager, Transportation Management Office, United States Postal Service, Boston, Massachusetts. Since the Government need only allege one overt act, the Court concludes that the Defendants' ninth argument is without merit. *See United States v. Turner*, 274 F.Supp. 412, 415 (E.D.Tenn. 1967); *United States v. Boisvert*, 187 F.Supp. 781, 785 (D.R.I.1960).

■ The penultimate ground raised by the Defendants is that the indictment fails sufficiently to inform the Defendants of the nature of the accusations against them in violation of the Sixth Amendment and is not a plain statement of essential facts as required by F.R.Cr.P. 7. While as indicated above the indictment is constructed in a complex manner, it is sufficiently clear to notify the Defendants of the charges against them to enable them to prepare a defense. Moreover, the indictment complies with Rule 7 in that it sets forth the nature of the charges as well as numerous overt acts and does so with sufficient precision. The fact that many paragraphs of the indictment are incorporated by reference into other paragraphs does not alter this conclusion. Such practice is contemplated by Rule 7(c)(1).

The particular language the Defendants find most offensive is that portion of Counts 2–12 that reads:

[T]he scheme which commenced on or about April 18, 1977, and continued until on or about December 31, 1978 and which is set forth in paragraphs one through five of that portion of Count I which indicates the various parts of the conspiracy engaged in by the Defendants, which paragraphs are contained on pages eight through nine of this Indictment, are incorporated within each of the following eleven Counts by reference as though fully set forth therein . . . .

While it takes more than a single reading to understand what that portion of the indictment means, it is clear that the indictment incorporates by reference into Counts 2–12 paragraphs one through five of pages eight and nine of the indictment. While the indictment would have been clearer had it merely stated that paragraphs one through five on pages eight and nine of the indictment are incorporated by reference, the language used is not sufficiently unclear or ambiguous to warrant dismissing the indictment.

■ The ultimate ground asserted by the Defendants is that Counts 23–25 fail to allege an offense. The Defendants argue that the failure of the Government to incorporate by reference the other allegations of

**1278**

the complaint is fatal to those counts. The Court is not persuaded. Each count in addition to tracking the language of 18 U.S.C. § 1001 sets forth that the Defendants in a matter within the jurisdiction of the Postal Service filed a false statement. Each count sets forth the substance of the false statement and why it was false. With respect to Counts 23 and 24 it is specifically alleged that Defendant Romanowski actually made the false statement while the conduct of the other Defendants was sufficiently alleged by the citation to 18 U.S.C. § 2. Certain particulars as to how each of the other Defendants aided and abetted Defendant Romanowski will be provided by the Government pursuant to the Court's Order of January 20, 1981.

Count 25 sets forth that the alleged false statement of the Defendants related to their alleged attempt to mislead the Postal Service as to the relationship of Defendant Petroleum Suppliers, Inc. to the other Defendants. It is the Court's view that the count which sets forth the substance of the false representation, to whom it was made, and otherwise charges in the language of the statute is sufficient to withstand a motion to dismiss.