**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Arnetta WEATHERSPOON,
Defendant-Appellant.**

No. 77–1875.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1978.

Decided July 12, 1978.

BAUER, Circuit Judge.

Following a jury trial, Arnetta Weatherspoon was convicted of sixteen counts of violating the racketeering, mail fraud and false statements statutes, 18 U.S.C. §§ 1001, 1341, 1961–63. The evidence presented at trial showed that Weatherspoon, who operated a beauty college approved for veterans' vocational training by the Veterans Administration, knowingly caused false student enrollment cards and attendance certificates to be mailed to the Veterans Administration in furtherance of a scheme to defraud that agency. On appeal, Weatherspoon raises numerous contentions in support of her claim that her convictions should be reversed. She argues: (1) that the Government failed to lay a proper foundation for admission of certain computer printouts into evidence, (2) that the Government breached a discovery agreement with her counsel, (3) that she could not be prosecuted under the mail fraud statute for conduct subject to the reach of the false statements statute, (4) that the mail fraud counts failed to charge use of the mails, (5) that the certifications she falsely made were too ambiguous to support a false statements prosecution, (6) that one who causes several mailings to be made in furtherance of a single scheme to defraud cannot be prosecuted for engaging in a "pattern" of racketeering activity within the meaning of 18 U.S.C. § 1962(c), and (7) that the district court improperly amended the indictment by deleting a portion thereof.

I.

Weatherspoon owned and operated Arnetta's Beauty College in Chicago, where she offered courses in cosmetology and beauty culture to tuition paying students. In January of 1970, Weatherspoon received approval to accept veterans as students from the Department of Veterans Affairs of the State of Illinois, a contractual agent of the Veterans Administration of the Unit-

Joseph A. Lamendella, Chicago, Ill., for defendant-appellant.

David J. Yeres, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, BAUER, Circuit Judge, and JAMESON, Senior District Judge.*

* The Hon. William J. Jameson, United States District Court for the District of Montana, is sitting by designation.

ed States. She was authorized to enroll no more than 42 veteran students out of a total student body of 50. The veteran students thereby became eligible to receive veterans' educational benefits from the VA for attending Weatherspoon's vocational school.

To obtain benefits, the veteran made formal application to the VA, which issued an eligibility certificate. The VA would refer eligible veterans to Arnetta's, and an enrollment certificate for each student would be completed by an authorized official at the school. Upon receipt of the enrollment certificate, the VA would issue a check covering educational expenses and tuition along with an attendance card. A full-time student was required to attend class thirty hours per week in fulfillment of his course requirements in order to obtain the maximum monthly benefit payment, which ranged from $220 to $500 per student. Both the student and Weatherspoon were required to certify attendance.

The indictment charged that Weatherspoon engaged in a scheme to defraud by enrolling students in excess of her authorized limit and by falsely certifying the attendance of her students. The evidence did in fact show those charges to be true, and Weatherspoon does not challenge the sufficiency of the evidence as such, but rather raises the other issues noted above.

### II.

Weatherspoon first assigns error in the trial court's admission of a series of computer printouts, which established that she had enrolled over six times as many veterans as students than she had been authorized to do. In essence, Weatherspoon contends that the Government failed to lay a proper foundation for admission of the printouts, which were simply a computerized compilation of information taken from the enrollment certification forms submitted by Weatherspoon and keypunched onto a tape fed into the computer. We disagree that an insufficient foundation was laid.

■ Pursuant to the testimony of a VA supervisory employee who was familiar with the preparation and use of the printouts, the Government showed to the satisfaction of the trial court (1) what the input procedures were, (2) that the input procedures and printouts were accurate within two percent, (3) that the computer was tested for internal programming errors on a monthly basis, and (4) that the printouts were made, maintained and relied on by the VA in the ordinary course of its business activities. Moreover, all the enrollment certificate forms submitted by Weatherspoon, which formed the data base fed into the computer, were made available to defense counsel for inspection. Defense counsel also had adequate opportunity to inquire into the accuracy of the input procedures and programming used. Under the circumstances, we believe that a sufficient showing of the reliability of the printouts was made to warrant their admission into evidence under the standards set out in *United States v. Liebert,* 519 F.2d 542, 547 (3rd Cir. 1975), and *United States v. Russo,* 480 F.2d 1228 (6th Cir. 1973), *cert. denied,* 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974).

### III.

Weatherspoon next complains that the Government breached a discovery agreement made with her counsel to provide her with a list of government witnesses a "reasonable time" prior to trial so that she would have a sufficient opportunity to prepare to meet their testimony. According to Weatherspoon, because the Government did not provide the witness list until two weeks before trial, the trial court should have granted her motion to preclude the government witnesses not mentioned in the indictment itself from testifying. We disagree.

■ We recognize, of course, that the court is empowered to impose sanctions on the Government for intentional noncompliance with pretrial discovery orders or agreements. E. g., *United States v. Jackson,* 508 F.2d 1001, 1005–1008 (7th Cir. 1975). We cannot agree, however, that exercise of our supervisory power is warrant-

ed in the circumstances of this case. The list of potential government witnesses in this case was virtually inexhaustible, and the task of interviewing potential witnesses and determining whom the Government would call at trial was an arduous one. Inasmuch as the Government turned over its witness list as soon as such witnesses had been selected, the Government cannot be charged with bad faith or intentional noncompliance with its informal discovery agreement. Moreover, we cannot see how the defense was prejudiced by the inevitable delay in the production of the witness list. Almost all the witnesses who appeared at trial were known to the defendant, as most were former students of Arnetta's whose testimony could have easily been anticipated by Weatherspoon. Inasmuch as defense counsel did not even find it necessary to ask for a continuance in order to prepare to meet the witnesses' testimony, we must assume that the two-week notice of its witnesses given by the Government was a "reasonable" time within which to prepare Weatherspoon's defense to their testimony. In any event, we do not believe prejudice resulted from any delay in turning over the witness list.

IV.

Weatherspoon next contends that she could not properly be charged under the mail fraud statute for the same acts which supported her convictions under the false statements statute. According to Weatherspoon, because the false statements statute, 18 U.S.C. § 1001, criminalized her submission of false enrollment certificates to the VA, she could not simultaneously be charged with violating the mail fraud statute, 18 U.S.C. § 1341, simply because she used the mails to submit the false enrollment certificates. We again disagree.

In support of her argument, Weatherspoon relies on United States v. Henderson, 386 F.Supp. 1048 (S.D.N.Y.1974), wherein the court held that the defendant was not

subject to prosecution and punishment under the mail fraud statute, 18 U.S.C. § 1341, for mailing income tax returns whose falsity formed the basis for the defendant's simultaneous prosecution under various criminal provisions of the Internal Revenue Code, 26 U.S.C. §§ 7202–07. In the course of so holding, the court reasoned that the mail fraud statute was designed to serve as a stopgap device to deal on a temporary basis with new forms of fraud until particularized legislation could be devised to deal directly with the villainous activity. Id. at 1053, citing United States v. Maze, 414 U.S. 395, 405–06, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) (Burger, J., dissenting). The court found in Congress's subsequent enactment of the criminal antifraud provisions of the Internal Revenue Code a latent intent to preempt the field of sanctions available for tax fraud violations, an intent that would be undermined if the Government were allowed to obtain "multiple sentences reaching staggering, if not utterly unrealistic, years of imprisonment" by prosecuting violators simultaneously under the mail fraud statute and the Code. Id. at 1053–54.

Although Henderson lends an aura of plausibility to Weatherspoon's argument, we find it of no help to her here. Even if we were to agree that Henderson is good law,[1] it would not apply here, for there is nothing in either the language or the legislative history of the false statements statute, 18 U.S.C. § 1001, reflecting any Congressional intent to create a hierarchy of sanctions that would preempt the application of the mail fraud statute, 18 U.S.C. § 1341, to the submission of false statements to a government agency through the use of the mails. We note that the mail fraud statute has long been used in concert with statutes proscribing the making of false statements to a government agency, and no question has heretofore been raised as to the propriety of doing so as far as we know. E. g., Hartwell v. United States, 107 F.2d 359 (5th Cir. 1939).

1. Henderson has been expressly repudiated by the Ninth Circuit, which permitted simultaneous use of the mail fraud and tax fraud statutes in United States v. Miller, 545 F.2d 1204, 1216 n. 17 (1976).

After all, the mail fraud statute proscribes different conduct and requires proof of different elements than the false statements statute, and Congress has the right to authorize additional sanctions for abuse of the mails in connection with a scheme to defraud the Government even though the fraud may be separately punished under another federal statute. Finally, we note that Weatherspoon received concurrent sentences under the mail fraud and false statements counts, and thus has little to gain as a practical matter even if we were to adopt her novel view that she could not be prosecuted under the mail fraud statute if her conduct could be reached, in whole or part, under another federal criminal statute. We hold that, by using the mails to submit false statements to a government agency, Weatherspoon subjected herself to separate prosecution and punishment under both the mail fraud and false statements statutes.

## V.

Weatherspoon next argues that her convictions for mail fraud must be reversed because the indictment underlying her convictions failed to charge an offense under 18 U.S.C. § 1341 in that it failed to allege use of the mails. Her argument is apparently premised on the misguided assumption that the mail fraud counts must parrot the precise language of the statute, which speaks of

> "plac[ing] in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, . . . or knowingly caus[ing] to be delivered by mail according to the directions thereon . . any such matter or thing." 18 U.S.C. § 1341.

In contrast to the precise language of the statute, the mail fraud counts at issue here alleged that the defendant, in furtherance of a scheme to defraud, "did knowingly and wilfully cause to be delivered an envelope . . . ., and thereafter said envelope was delivered, according to the directions thereon, by the United States Postal Service . . . .."

Weatherspoon's argument appears to be that, because the mail fraud counts alleged only that she caused an envelope to be delivered, rather than alleging that she caused an envelope to be delivered by mail, that the counts were fatally deficient. We disagree.

 There is no requirement that an indictment track the exact language of the proscribing statute if the indictment otherwise sufficiently charges each of the essential elements of the crime. *United States v. Constant*, 501 F.2d 1284, 1287 (5th Cir. 1974). Moreover, in determining whether an essential element of the crime has been omitted from the charge, courts will not insist that any particular word or phrase, such as "mail" here, be used. *United States v. Camp*, 541 F.2d 737, 740 (8th Cir. 1976). The element may be alleged "in any form" which substantially states it. *Hagner v. United States*, 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861 (1932).

 Here, Weatherspoon contends that the indictment fails to allege that she used the mails. However, when the mail fraud counts are given the commonsense reading to which they are entitled, *United States v. Anderson*, 532 F.2d 1218, 1222 (9th Cir. 1976), they clearly allege that Weatherspoon caused an envelope to be delivered by the United States Postal Service. This necessarily constitutes an allegation that she caused the envelope to be delivered by mail, for 18 U.S.C. § 1341 itself defines "mail matter" as "any matter or thing whatever to be sent or delivered by the Postal Service." We hold that the mail fraud counts sufficiently alleged an offense under 18 U.S.C. § 1341.

## VI.

Weatherspoon's next argument is that her convictions under the false statements statute, 18 U.S.C. § 1001, must be reversed because the allegedly false certifications she made were so vaguely worded and ambiguous that they cannot support the imposition of penal sanctions. In support of her argument, Weatherspoon relies on *Lanzetta*

*v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939), wherein the Court held that a criminal statute that was no vague and uncertain on its face that persons of ordinary intelligence must necessarily guess as to its meaning offended the due process clause.

We have no problem, of course, with the vagueness doctrine of *Lanzetta* and its progeny. The doctrine is not, however, applicable here, for the enrollment certification made by Weatherspoon was perfectly clear on its face. It reads:

> "Enrollment of this student does not exceed any limit established by the State Approving Agency for enrollment in this course."

We find nothing vague about the above certification. Moreover, even if we agreed with Weatherspoon that the language is not a model of clarity, we note that the "vagueness" argument was open to Weatherspoon at trial, for the Government was required under 18 U.S.C. § 1001 to establish not only that the certification was false, but also that Weatherspoon had made the certification *knowing* it to be false. The jury, obviously, was not impressed with Weatherspoon's argument that she had made an understandable mistake in interpreting a vague government form. Neither are we. Particularly in view of the intent element of 18 U.S.C. § 1001, which precludes a conviction for an honest misinterpretation of a government form, we hold that the certification falsely made by Weatherspoon here was not so vague on its face as to violate the due process clause as a matter of law.

## VII.

Weatherspoon's next contention is that she did not engage in a "pattern of racketeering activity" within the meaning of 18 U.S.C. §§ 1961(5), 1962(c) because she did not commit two separate "acts" of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B). In essence, Weatherspoon argues that, because all of the mail fraud counts arose out of a single scheme to defraud, there was only one "act" of racketeering activity even though she caused several mailings in furtherance of the single scheme.

Weatherspoon's argument is premised on a unique (and rather imaginative, we might add) construction of 18 U.S.C. § 1961(1)(B), which defines "racketeering activity." It provides in relevant part that

> " 'racketeering activity' means . . . (B) any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud) . . . "

Weatherspoon's theory is that, as applied to "acts" indictable under the mail fraud statute, 18 U.S.C. § 1961(1)(B) refers to schemes to defraud rather than any mailings in furtherance of the schemes. Thus, according to Weatherspoon, there was only one "act" of racketeering activity because all of the mailings which formed the basis for the mail fraud counts were in furtherance of a single scheme to defraud. We cannot agree.

We are not cited to anything in the legislative history of the Organized Crime Control Act of 1970 supportive of Weatherspoon's novel argument, and we believe that the plain language of the statute itself refutes it.[2] As 18 U.S.C. § 1961(1)(B) makes plain, racketeering activity is any act indictable under the mail fraud statute, 18 U.S.C. § 1341. A "scheme to defraud" is not an "act" indictable under the mail fraud statute, for though the offense of mail

---

**2.** Indeed, if we were to adopt Weatherspoon's position, a serious question would arise as to the constitutionality of the RICO statute. To save the statute from "void for vagueness" attacks, at least two district courts have construed a "pattern of racketeering activity" to require a showing that the two indictable acts be connected by a common scheme, plan or motive. E. g., *United States v. Stofsky,* 409 F.Supp. 609, 614 (S.D.N.Y.1973); *United States*

*v. White,* 386 F.Supp. 882, 883–84 (E.D.Wis. 1974). Contra, *United States v. Elliott,* 571 F.2d 880, 899 n. 23 (5th Cir. 1978). In contrast, Weatherspoon would require a showing of separate and unrelated schemes, as a precondition for finding two indictable "acts" under 18 U.S.C. § 1341 that would constitute a "pattern of racketeering activity" under 18 U.S.C. §§ 1961(1)(B), (5), 1962(c).

**602**

fraud "has its genesis in the scheme to defraud, the very gist of [the crime] is the use of the mails in executing the scheme." *United States v. Crummer,* 151 F.2d 958, 962 (10th Cir. 1946). It is for this reason that each mailing in furtherance of a scheme to defraud is a separate offense under 18 U.S.C. § 1341 even if there is but one scheme involved. *United States v. Joyce,* 499 F.2d 9, 19 (7th Cir.), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974). Accordingly, as it is clear that the only "acts" indictable under 18 U.S.C. § 1341 are *mailings* in furtherance of a scheme to defraud, it follows that Weatherspoon has engaged in five acts of "racketeering activity" as defined in 18 U.S.C. § 1961(1)(B) by virtue of the fact that she committed five separate acts of mail fraud. As a consequence, she engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. §§ 1961(5), 1962(c) because she committed two or more acts of "racketeering activity."

### VIII.

Weatherspoon last argues that the district court committed reversible error in granting the Government's motion to strike a nonessential portion of count one of the indictment, which stated that the assets of Arnetta's Beauty College were owned by Weatherspoon and subject to forfeiture under 18 U.S.C. § 1963.

We find no error in the district court's action. The language omitted was not essential to the charge specified in count one, and the Government had not offered any evidence to show that Weatherspoon owned all the assets of the beauty college, which therefore would have subjected the assets to forfeiture under 18 U.S.C. § 1963. The indictment was thus not improperly amended. See *United States v. Sir Kue Chin,* 534 F.2d 1032 (2d Cir. 1976); *United States v. Dawson,* 516 F.2d 796, 799-804 (9th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975).

The district court's judgment is Affirmed.