**HAROCO, INC., et al., Plaintiffs,**

**v.**

**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, et al., Defendants.**

**No. 83 C 1618.**

United States District Court, N.D. Illinois, E.D.

July 7, 1986.

Joel M. Hellman, Aram A. Hartunian, Ronald L. Futterman, Robert C. Howard, Hartunian, Futterman & Howard, Chtd., Chicago, Ill., for plaintiffs.

Don H. Reuben, Robert W. Tarun, Reuben & Proctor, Katherine Rakowsky, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Haroco, Inc., Roman Ceramics, Inc., California Originals, Inc. and Mike Wayne Distilled Products Co., (collectively, "plaintiffs"), bring this class action against American National Bank and Trust Co. of Chicago ("ANB"), and its employee Ronald Grayheck ("Grayheck"). The original complaint, filed in March of 1983, included claims under the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and pendent state claims. The defendants successfully moved for dismissal of the complaint. The court held plaintiffs had failed to state a RICO cause of action because the complaint did not allege a RICO injury distinct from that arising from the predicate offenses. Plaintiffs took a successful appeal to the Seventh Circuit; *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984). The United States Supreme Court affirmed the Seventh Circuit's decision; *American National Bank and Trust Co. of Chicago v. Haroco, Inc.*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). In so doing, the Court relied principally on its decision in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

On remand, plaintiffs have filed a Second, and now a Third Amended Complaint (hereafter, the "complaint"). Counts I, II, and III allege causes of action under RICO. Count IV includes breach of contract claims. Count V asserts violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 261 *et seq.* Finally, Count VI alleges breaches of fiduciary duty.

The defendants move to dismiss the complaint. ANB contends plaintiffs' RICO claims under Counts I, II, and III must be dismissed under Fed.R.Civ.P. 12(b)(6),[1] because the complaint does not plead the requisite pattern of racketeering. Grayheck makes the same argument with respect to Count I, the only count to which he is a defendant.[2] In the event the court dismisses the RICO counts, ANB argues for dismissal of the pendent counts for

---

1. Dismissal for failure to state a claim is proper only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The court must take all the complaint's well-pleaded allegations as true and view them, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiffs. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir. 1981).

2. Grayheck is a defendant solely with respect to Count I. ANB is a defendant to all six counts.

want of jurisdiction. Fed.R.Civ.P. 12(b)(1); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Should ANB's motion fail with respect to any of the RICO counts, its Rule 12(b)(1) motion would fail as well. In that circumstance, ANB raises additional arguments for dismissal of Counts V and VI under Fed.R.Civ.P. 12(b)(6).

### I. *Factual Background*

The following facts, which must be taken as true for purposes of this motion, appear from the complaint. ANB made certain loans to plaintiffs, the interest rates for which were provided in certain loan agreements and promissory notes executed by the parties. These interest rates were tied to ANB's prime rate, i.e. "one percent over the bank's prime rate." Complaint at ¶ 13. "Prime Rate" was expressly defined as "the rate of interest charged by [ANB] to its largest and most creditworthy commercial borrowers for 90–day unsecured commercial loans." *Id.* Of course, ANB's prime rate fluctuated over time. These changes were reflected in the interest rates on plaintiffs' loans. ANB, through Grayheck and other employees, defrauded plaintiffs by calculating these interest rates based upon a rate above its actual prime rate. In furtherance of this scheme, ANB used the mails to notify plaintiffs of changes in the interest rates and secure interest payments.

### II. *Discussion*

### A. *RICO Claims*

### 1. *Counts I, II and III: The RICO Pattern Requirement*

Counts I and III are brought under 18 U.S.C. § 1962(c) which provides in pertinent part:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

To paraphrase, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima*, 473 U.S. at ——, 105 S.Ct. at 3285.

Count I alleges Grayheck conducted ANB's affairs through a pattern of racketeering. Count III alleges ANB conducted the affairs of its parent, Walter E. Heller International Corp., through a pattern of racketeering.

Count II is premised upon 18 U.S.C. § 1962(a) which provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce ...

The theory here is that ANB received and used proceeds from a pattern of racketeering.

Under all three counts, plaintiffs must plead a pattern of racketeering. The defendants contend plaintiffs have not done so.

In the aftermath of the Supreme Court's recent decision in *Sedima, supra,* judicial attempts to limit the reach of civil RICO to the infiltration of legitimate businesses by organized crime have focused on the pattern requirement of section 1962(c). In *Sedima*, the Supreme Court explains that RICO's application to so-called "respectable businesses," is primarily due to the breadth of its predicate offenses, particularly wire, mail and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of the pattern requirement. *Sedima*, 473 U.S. at ——, 105 S.Ct. at 3287. In its much discussed footnote 14, *Sedima* provides some guidance as to the appropri-

ate interpretation of the pattern requirement:

> [T]he definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." ... As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.'" S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship ... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern ..." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). *See also id.* at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. *Cf. Iannelli v. United States,* 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

*Sedima,* 473 U.S. at —— n. 14, 105 S.Ct. at 3285 n. 14 (emphasis in original).

In the year since *Sedima,* some members of this court have enthusiastically embraced what has been perceived as the Supreme Court's invitation to limit civil RICO through a restrictive interpretation of the pattern requirement. My colleague, Judge Shadur, has been at the forefront of this effort. *See e.g. Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985); *United States v. Yonan,* 622 F.Supp. 721 (N.D.Ill.1985); *SJ Advanced Technology & Management Corp. v. Junkunc,* 627 F.Supp. 572 (N.D. Ill.1986); *Dunham v. Independence Bank of Chicago,* 629 F.Supp. 983 (N.D.Ill.1986). *Inryco* represents Judge Shadur's most comprehensive statement on this subject. *Inryco's* analysis, however, is somewhat confusing. At the outset, it observes the evolution of two divergent views with respect to the pattern requirement. One view allows that any two racketeering acts by an enterprise, no matter how unrelated, constitute the requisite pattern. The other requires some relation among the acts. This latter view, according to *Inryco,* had been embraced by the Seventh Circuit in *United States v. Starnes,* 644 F.2d 673, 677–678 (7th Cir.1981), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981), and *United States v. Weatherspoon,* 581 F.2d 595, 601–602 (7th Cir.1978). Judge Shadur found the Seventh Circuit's view persuasive, and with this, the court is in full agreement.

At this point, however, Judge Shadur shifts ground, arguing that, in addition to similarity, pattern connotes a multiplicity of criminal events:

> "[P]attern" ... connotes a multiplicity of events: Surely the continuity inherent in the term presumes repeated criminal *activity,* not merely repeated *acts* to carry out the *same* criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity."

*Inryco,* 615 F.Supp. at 831. It then cites *dictum* from *United States v. Moeller,* 402 F.Supp. 49, 57–58 (D.Conn.1975), and *Sedima's* footnote 14 in support of this proposition. While *Moeller* supports this proposi-

tion, footnote 14 does not. As *Inryco* admits, the flaw pointed to by the Supreme Court in footnote 14 is the assumption that any two racketeering acts automatically spell out a RICO pattern. Footnote 14 simply does not support the proposition that a RICO pattern requires multiple criminal schemes. To the contrary, its explanation of the pattern requirement in terms of continuity and relationship is in harmony with *Starnes* and *Weatherspoon.*

■■■ Nor does *Inryco* accord with the language of section 1962(c). That section speaks of a pattern of racketeering activity, not a pattern of criminal schemes. *Sedima,* 473 U.S. at ——, 105 S.Ct. at 3285. Mail fraud is a racketeering activity. 18 U.S.C. § 1961(1). Under the mail fraud statute 18 U.S.C. § 1341, each mailing in furtherance of a fraudulent scheme constitutes a separate offense. *See e.g. Weatherspoon,* 581 F.2d at 602. The conclusion is inescapable that a number of fraudulent mailings, related to one another in the context of a fraudulent scheme conducted through an enterprise, constitutes a pattern of racketeering within the plain meaning of section 1962(c).

*Inryco's* approach which, as demonstrated above, lacks support under Supreme Court and Seventh Circuit case law, as well as the language of section 1962(c), has also proven unpredictable in practice. This is due to the difficulty of ascertaining and distinguishing separate criminal "schemes." Certainly, "scheme" is not synonymous with offense because *Inryco* teaches that separate mail fraud offenses do not provide the requisite schemes. Yet, in *Yonan, supra,* Judge Shadur found allegations that the defendant, on separate occasions, paid bribes to the same person to influence the outcomes of several criminal cases satisfied the pattern requirement. *Yonan,* 622 F.Supp. at 728. *Yonan* distinguishes the situation in *Inryco* without ex-

planation. This distinction, at best problematic, and at worst, evanescent, renders the pattern requirement unpredictable.[3]

Finally, *Inryco's* formulation contravenes the legislative intent behind civil RICO. Surely, a legitimate business can be infiltrated through a single scheme. Yet, *Inryco* and its progeny deny civil RICO relief to the victim of a single criminal scheme involving a number of racketeering acts. *See accord* Moran, "The Meaning of Pattern in RICO," 62 *Chi.-Kent L. Rev.* 139, 156 (1985).

Judge Getzendanner has developed a somewhat different interpretation of the pattern requirement. In *Graham v. Slaughter,* 624 F.Supp. 222 (N.D.Ill.1985), Judge Getzendanner agrees with Judge Shadur that, to the extent *Weatherspoon* and *Starnes* imply multiple mailings in furtherance of a single criminal episode may constitute a pattern, they are inconsistent with *Sedima.* She parts company with Judge Shadur, however, with regard to the *dictum* in *Inryco* that multiple mailings can never establish a pattern of racketeering activity unless they implement different fraudulent schemes. Between *Weatherspoon* and *Starnes,* as interpreted by Judges Shadur and Getzendanner, and this *dictum* in *Inryco,* Judge Getzendanner purports to find a middle ground. *Graham* holds that in order to satisfy the continuity element of the pattern requirement, there must be more than a single transaction or episode, but not necessarily more than a single scheme. *Graham,* 624 F.Supp. at 225.[4] The court found that twenty predicate acts of embezzlement over a two year period satisfied this standard. *Id.*

*Graham* distinguishes *Inryco* on grounds that the mailings in *Inryco* were ministerial acts, not independently motivated crimes. This distinction does not survive close inspection. In both *Inryco* and

---

3. This potential for confusion is illustrated by *Graham,* which views *Yonan* as a retreat from the *dictum* in *Inryco. Graham,* 624 F.Supp. at 225. Apparently, such is not the case. *See Dunham,* 629 F.Supp. at 989.

4. The difficulty of distinguishing criminal "episodes" renders *Graham's* formulation of the pattern requirement, like that of *Inryco,* vague and unpredictable.

*Graham*, the mails were used to further a fraudulent scheme. Neither court found the mailings insufficient under the mail fraud statute. Neither court found the mailings unrelated to the fraudulent scheme. In short, the mailings constituted separate but related mail fraud offenses.

The frailty of this distinction highlights the central problem with both *Inryco* and *Graham*. They confuse and distort the pattern requirement in an effort to ameliorate the breadth of RICO's predicate offenses, particularly mail fraud. It is not for the courts to decide whether a pattern must involve criminal schemes, episodes or transactions. Congress made this decision. The constituent elements of the requisite pattern are "racketeering activities." *Sedima*, 473 U.S. at ——, 105 S.Ct. at 3285. Mail fraud is expressly included in the definition of racketeering activities. Under the mail fraud statute, each mailing in furtherance of the fraudulent scheme constitutes a separate offense, and thus a racketeering activity.

■ From the courts' analysis of *Inryco* and *Graham*, its interpretation of the pattern requirement is already clear. As a linguistic matter, pattern connotes relationship and continuity. The racketeering activities must be related to each other and the enterprise. The constituent elements of a pattern are racketeering activities as defined by section 1961(1). Thus, a number of mailings, fraudulent within the meaning of 18 U.S.C. § 1341, in furtherance of a fraudulent scheme, constitute a pattern of racketeering activity.[5]

The court does not propose this interpretation as its own creation. *See e.g. Trak Microcomputer Corp. v. Wearne Brothers*, 628 F.Supp. 1089, 1095–1096 (N.D.Ill. 1985) (McGarr, J.) (allegations of numerous racketeering acts, continuous over time, and related to one another in furtherance of a fraudulent scheme, satisfy the pattern

requirement); *Systems Research, Inc. v. Random, Inc.*, 614 F.Supp. 494, 497 (N.D. Ill.1985) (Bua, J.) (mailings in furtherance of a fraudulent scheme satisfy the pattern requirement).

More importantly, this interpretation is supported, if not mandated, by the Seventh Circuit's decisions both prior to and subsequent to *Sedima*. Contrary to their interpretation in *Inryco* and *Graham*, *Starnes* and *Weatherspoon* stand for the proposition that a pattern is shown by proof of at least two related instances of racketeering activity. In the aftermath of *Sedima*, the Seventh Circuit has reiterated this view in *Illinois Department of Revenue v. Phillips*, 771 F.2d 312, 313 (7th Cir.1985) (mailing of nine fraudulent tax returns over a nine month period constitutes a pattern). *Cf. also Spiegel v. Continental Illinois Bank*, 790 F.2d 638, 646–650 (7th Cir.1986).

Finally, the court's formulation follows the Supreme Court's guidance in footnote 14 of *Sedima*. Footnote 14 criticizes the assumption that two racketeering acts, isolated and unrelated, constitute a pattern. Its emphasis upon continuity and relationship fully accords with this court's analysis.

■ Turning, at long last, to the facts of this case, plaintiffs allege ANB delivered notices concerning interest rate changes and received interest payments through the mails. These allegations, which mirror those considered by the Seventh Circuit on appeal, satisfy the particularity requirement of Fed.R.Civ.P. 9(b). *Haroco*, 747 F.2d at 405. The allegations also show continuity and relationship in the context of a fraudulent scheme. The mailings sent by the defendants were numerous and, it is reasonable to infer, periodic. They furthered the fraudulent schemes. Thus, plaintiffs have sufficiently alleged a pattern of racketeering activity.[6] Defendants'

---

**5.** This formulation is not contrary to the court's analysis in *Lipin Enterprises, Inc. v. Lee*, 625 F.Supp. 1098 (1985), *appeal docketed* 803 F.2d 322 (7th Cir.1985). In *Lipin Enterprises, Inc.*, the complaint alleged that the defendants used the mails, but wholly failed to explain the rela-

tionship between these mailings and the fraudulent scheme. Such is not the case here.

**6.** While the court rests this decision upon its understanding of the pattern requirement, it notes that the complaint sufficiently pleads a

motion to dismiss Counts I, II and III for want of such a pleading is denied.

### 2. *Count 1: "Respondeat Superior" Liability Under Section 1962(c)*

■ ANB contends that, as applied to it, Count I fails to state a claim because liability under section 1962(c) may not be founded upon the common law doctrine of *respondeat superior.* In light of RICO's remedial purpose, the court is hesitant to interpret its private right of action more narrowly than that available for analogous torts. *Cf. American Society of Mechanical Engineers, Inc. v. Hydrolevel, Inc.,* 456 U.S. 556, 569, 102 S.Ct. 1935, 1944, 72 L.Ed.2d 330 (1982). However, *respondeat superior,* as applied in this case, is inconsistent with the statutory scheme of section 1962(c).

Section 1962(c) holds a "person" liable for conducting the affairs of an "enterprise" through a pattern of racketeering. In this circuit, it is well settled that the "person" and "enterprise" must be distinct under section 1962(c). That is, ANB cannot be liable, as the "person," for conducting itself, the "enterprise," through a pattern of racketeering. *United States v. DiCaro,* 772 F.2d 1314, 1319–1320 (7th Cir. 1985); *Masi v. Ford City National Bank & Trust Co.,* 779 F.2d 397, 401–402 (7th Cir.1985); *Haroco,* 747 F.2d at 402. In short, the "enterprise" is not liable under section 1962(c).

Plaintiffs' use of *respondeat superior* to hold ANB, the "enterprise," liable would circumvent the design of section 1962(c). *See e.g. Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20, 24 n. 9 (N.D.Ill.1982); *Rush v. Oppenheimer & Co.,* 628 F.Supp. 1188, 1194–1196 (S.D.N.Y.1985).

Moreover, as *Haroco* makes clear, corporate liability for the acts of employees is amply provided for by section 1962(a), under which the "person" and "enterprise" need not be distinct. *Haroco,* 747 F.2d at 402.

The cases relied upon by plaintiffs do not convince the court otherwise. Both *In Re Olympia Brewing Co. Securities Litigation,* No. 77 C 1206, slip op. (N.D.Ill. December 18, 1984) [Available on WESTLAW, DCTU database] and *Wagman v. FSC Securities Corp.,* [1985–1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,445 (N.D.Ill. 1985) [Available on WESTLAW, DCTU database], involve section 1962(a), under which the person/enterprise distinction is absent. Their analysis is thus inapposite with respect to section 1962(c). *Cf. Haroco,* 747 F.2d at 401 n. 18 (noting "substantial difference[s]" between sections 1962(a) and (c)). Neither *Bernstein v. IDT Corp.,* 582 F.Supp. 1079, 1083–1084 (D.Del 1984), nor *Morley v. Cohen,* 610 F.Supp. 798, 811 (D.Md.1985), address the propriety of *respondeat superior* liability under section 1962(c) in light of the person/enterprise distinction.

The court concludes that ANB, the "enterprise" under Count I, may not be held liable under the doctrine of *respondeat superior* for Grayheck's violation of section 1962(c). Accordingly, ANB is dismissed as a defendant to Count I.[7]

### 3. *Count II: ANB's Liability Under Section 1962(a)*

■ Plaintiffs allege ANB received and used the excess interest payments in its business. While such allegations indisputably state a cause of action under section 1962(a), the issue raised by this motion is whether plaintiffs have standing to assert this claim. ANB points to section 1964(c) which provides a civil cause of action for persons injured "by reason of" a section 1962 violation, and contends plaintiffs have not alleged injuries by reason of its use of the excess interest. Plaintiffs contend the injuries suffered as a result of the predicate acts are sufficient.

Section 1964(c) establishes a proximate cause requirement. *Haroco,* 747 F.2d at 398. As the Seventh Circuit explained, "A

---

"pattern" as defined by both *Inryco* and *Graham.*

7. Grayheck, of course, remains a defendant to Count I.

defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Haroco*, 747 F.2d at 398; *see also Sedima*, 473 U.S. at ——, 105 S.Ct. at 3286 (quoting this passage with approval). In essence, the parties differ as to the linkage between the injury and violation necessary to establish standing.

There can be no violation of section 1962(a) without a pattern of racketeering activity, from which proceeds may be derived and invested. That is, injury to the victim of racketeering provides the benefits which section 1962(a) intends to recover.

Yet, ANB would require more. It would require that each element of the section 1962(a) violation contribute to plaintiffs' injury. This argument mirrors the now discredited reasoning of *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984), *vacated* —— U.S. ——, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985). *Bankers Trust* required that each element of a section 1962(c) violation constitute a but-for cause of the plaintiff's injury. *Haroco*, after extended discussion, concluded this but-for test is contrary to Seventh Circuit law. *Haroco*, 747 F.2d at 398.

The Seventh Circuit's interpretation of Section 1962(a) in *Haroco* further supports plaintiffs' position. In reasoning that the "person" and "enterprise" must be distinct under section 1962(c), the court addressed concerns that its interpretation would effectively shield deep corporate pockets from RICO liability. The court downplayed this concern, pointing to the availability of section 1962(a):

> [A] corporation-enterprise may be held liable under subsection (a) when the corporation is also a perpetrator. As we parse subsection (a), a "person" (such as a corporate-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity in which the person has partici-

pated as a principal within the meaning of 18 U.S.C. § 2, and if the person uses the income in the establishment or *operation* of an enterprise affecting commerce. Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate. Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering.

*Haroco*, 747 F.2d at 402 (footnotes omitted) (emphasis in original).[8]

Thus, as *Haroco* explains, when the fruits of racketeering come to rest in a corporate-enterprise, that enterprise is within RICO's intended reach. Section 1962(a) is designed to recover these proceeds. *Haroco*, 747 F.2d at 401 n. 18., 402. Section 1964(c) must be read to further this design. *Sedima*, 473 U.S. at ——, 105 S.Ct. at 3286. The victim's standing to sue is essential to the effectiveness of section 1962(a). While the enterprise's use of racketeering proceeds will rarely harm the victim directly, the victim's loss is necessarily linked to the enterprise's gain. This is sufficient to satisfy the proximate cause requirement of section 1964(c). Accordingly, ANB's motion to dismiss Count II is denied.

### B. *Pendent Claims*

#### 1. *Count IV*

ANB's only argument with respect to this contract count is that, should the RICO claims against it be dismissed, the court would lack jurisdiction over the pendent claims. Inasmuch as the RICO claims in

---

**8.** While this statement is *dictum* in *Haroco*, the Seventh Circuit adopts it as a holding in *Masi*,

779 F.2d at 401–402.

Counts II and III survive, ANB's attack on Count IV fails.

### 2. *Count V*

■ Plaintiffs claim ANB's fraudulent interest rate calculations are actionable under the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 261 *et seq.* (Consumer Fraud Act). In particular, plaintiffs rely on paragraph 262 which provides:

Unfair methods of competition and unfair or deceptive acts or practices including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

The case law interpreting the Consumer Fraud Act bears a striking resemblance to that interpreting RICO. Courts, aghast at the apparent breadth of these statutes, have searched for means to limit their reach. In the case of the Consumer Fraud Act, some courts, fearful that the Act will reach purely private disputes otherwise reserved to the common law, have required proof of a public injury, or at least, an effect upon consumers generally. *See Newman-Green, Inc. v. Alfonzo-Larrain R.,* 590 F.Supp. 1083, 1086–1087 (N.D.Ill. 1984); *Frahm v. Urkovich,* 113 Ill.App.3d 580, 586, 69 Ill.Dec. 572, 576, 447 N.E.2d 1007, 1011 (1st Dist.1983); *Exchange National Bank v. Farm Bureau Life Insurance Co. of Michigan,* 108 Ill.App.3d 212, 216, 63 Ill.Dec. 884, 887, 438 N.E.2d 1247, 1250 (3rd Dist.1982); *Evanston Motor Co. v. Mid-Southern Toyota Distributors, Inc.,* 436 F.Supp. 1370, 1374 (N.D.Ill.1977). ANB claims plaintiffs have not sufficiently alleged public injury.

Of these cases, only *Evanston Motor Co.* provides substantial analysis supporting this conclusion. *Evanston's* analysis, however, is based on a misreading of *Fitzgerald v. Chicago Title & Trust Co.,* 46 Ill. App.3d 526, 5 Ill.Dec. 94, 361 N.E.2d 94 (1st Dist.1977), *affirmed* 72 Ill.2d 179, 20 Ill. Dec. 581, 380 N.E.2d 790 (1978). *Evanston* reads *Fitzgerald* as ruling that, based upon the language of paragraph 262, and in the absence of Illinois precedent, the Consumer Fraud Act must be read *in pari materia* with section 5(a) of the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45(a). *Evanston* then points to the jurisprudence under section 5(b) of the FTCA allowing Federal Trade Commission (FTC) enforcement actions only where such proceedings serve the public interest, from whence it derives the public injury requirement.

This reasoning is faulty, because paragraph 262 references section 5(a) of the FTCA, not section 5(b). As *Fitzgerald* indicates, section 5(a) is relevant in determining whether a claim involves an actionable act or practice. That is, paragraph 262's reference to section 5(a) ties the interpretation of the Consumer Fraud Act's underlying offenses to that of the FTCA's offenses.

Moreover, *Fitzgerald* indicates that where the Consumer Fraud Act and FTCA differ, this difference must be respected. *Fitzgerald,* 46 Ill.App.3d at 529, 5 Ill.Dec. at 97, 361 N.E.2d at 97 (Consumer Fraud Act reaches transactions in intangibles where FTCA does not). With regard to their standing provisions, the two acts are quite dissimilar. The FTCA provides no private cause of action. It allows enforcement proceedings by the FTC brought in the public interest. The Consumer Fraud Act provides the Illinois Attorney General with similar enforcement power. Ill.Rev. Stat. ch. 121½, ¶ 263. In addition, though,

it provides a private cause of action for any person damaged by a violation of its provisions. Ill.Rev.Stat. ch. 121½, ¶ 270. There is no mention of a public injury requirement in paragraph 270. Moreover, paragraph 263 indicates that, where the legislature intended such a requirement, it expressly provided therefor.

In sum, the court finds no indication of a public injury standing requirement under paragraph 270 of the Consumer Fraud Act. The court is not alone in this conclusion. *See Overland Bond and Investment Corp. v. Mahoney*, 82 C 2283 slip op. at 13 (N.D. Ill. July 30, 1984); *In Re CLDC Management Corp.*, 18 B.R. 797, 800 (Bankr.N.D. Ill.1982); *M & W Gear Co. v. AW Dynamometer, Inc.*, 97 Ill.App.3d 904, 913–914, 53 Ill.Dec. 721, 732, 424 N.E.2d 356, 365 (4th Dist.1981).

Apart from the contention that plaintiffs' have not alleged a public injury, defendants have no quarrel with the pleading of Count V. As that contention has failed, defendants' motion to dismiss Count V is denied.[9]

#### 3. *Count VI*

■ Plaintiffs claim ANB was their fiduciary which, by failing to correctly calculate the interest rates, breached its fiduciary duties. A fiduciary relationship is one which involves confidence and trust by one party and dominance and influence by the other. *See e.g. Carey Electric Contracting, Inc. v. First National Bank of Elgin*, 74 Ill.App.3d 233, 238; 30 Ill.Dec. 104, 109, 392 N.E.2d 759, 763 (2d Dist.1979).

Plaintiffs' admit a debtor/creditor relationship is not a fiduciary one. *See McErlean v. Union National Bank of Chicago*, 90 Ill.App.3d 1141, 1148–1149, 46 Ill.Dec. 406, 412, 414 N.E.2d 128, 134 (1st Dist. 1980). Yet, the complaint pleads no more than this.[10] The parties are businesses presumably dealing at arms length. Their relationships were governed by contracts. In short, they enjoyed no more than customary business relationships. That plaintiffs trusted ANB to perform its contractual obligations does not make ANB their fiduciary. To hold otherwise would seriously erode, if not emasculate, the long established distinction between contract and tort. In sum, ANB owed plaintiffs a contractual duty, not a fiduciary one. Thus, Count VI fails to state a claim and is dismissed.

#### III. *Conclusion*

ANB is dismissed as a defendant to Count I, though Grayheck remains a defendant thereto. Count VI is dismissed in its entirety. The remainder of the Third Amended Complaint survives intact. Defendants shall answer the Third Amended Complaint within thirty days.

---

**9.** The complaint, liberally construed, alleges facts showing ANB's interest rate miscalculations occurred with such frequency as to constitute a practice affecting consumers generally. Thus, assuming *arguendo*, that public injury is a requirement under paragraph 262, plaintiffs' complaint adequately pleads such an injury.

**10.** ANB was not plaintiffs' agent. This distinguishes the cases primarily relied upon by plaintiffs. *See e.g. Janes v. First Federal Savings & Loan Association of Berwyn*, 57 Ill.2d 398, 312 N.E.2d 605 (1974).